UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ROBERT A. TRIBBLE,                  )
                                    )    No. 1:08-CV-47/1:05-CR-33
v.                                  )
                                    )    *Chief Judge Curtis L. Collier*
UNITED STATES OF AMERICA            )

## MEMORANDUM

Robert A. Tribble ("Tribble"), has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Court File No. 21).[1]  Tribble contends he was deprived of his right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution.  The United States opposes the motion (Court File No.27).

After reviewing the record, the Court concludes the record conclusively shows that an evidentiary hearing is not necessary, and  Tribble's § 2255 motion will be **DENIED** for the reasons which follow (Court File No. 21).

## I.      28 U.S.C. § 2255 - Standard of Review

This Court must vacate and set aside the sentence if it finds "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ."  28 U.S.C. § 2255. Under Rule 4 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief.  If it plainly

---

[1]        Citations to docket entries will refer to the underlying criminal court case file.  All filings in this § 2255 proceeding shall be filed in criminal court case file number 1:05-cr-33.

appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959), *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 116 S. Ct. 1701, 134 L. Ed. 2d 800 (1996).

## II. Procedural Background

The recitation of the somewhat convoluted procedural background of this case is taken from

the Presentence Investigation Report ("PSI"):

1.      On March 11, 2003, a grand jury sitting in the Eastern District of Tennessee filed a one-count Indictment charging Robert Tribble with a violation of 18 U.S.C. §§ 876 and 2 (Docket No. 1:03-cr-00064). On May 12, 2003, the defendant went to trial before a jury in the District Court of Judge Curtis L. Collier which ended in mistrial on May 14, 2003. Trial was reset for July 28, 2003. On May 29, 2003, Judge Collier dismissed the charges against Mr. Tribble without prejudice at the request of the government. On November 25, 2003, the grand jury issued a second one-count Indictment (Docket No. 1:03-cr-238) charging the defendant with the same offense as previously charged. The defendant failed to appear for trial on June 21, 2004. On August 24, 2004, a First Superseding Indictment was filed naming Robert Tribble which incorporates the original Count One. Count Two charges the defendant with a violation of 18 U.S.C. § 3146.

2.      On June 22, 2004, the defendant was arrested by state police in Florida as wanted by federal authorities on the outstanding charges. He appeared in the District Court, Northern District of Florida and was transferred to the Eastern District of Tennessee following a hearing. On August 6, 2004, the defendant appeared before United States Magistrate Judge William B. Mitchell Carter and was denied bond. A jury trial was scheduled for March 21, 2005.[2]

3.      On March 18, 2005, the defendant appeared before Judge Collier along with counsel and pled guilty to a two-count Bill of Information (Docket No. 1:05-cr-

---

[2]      Because these dates are important as they relate to Tribble's denial of speedy trial claim, a correct timeline and detailed explanation is necessary. The Court's CM/ECF docket sheet reflects that at the August 6, 2004, bond hearing, United States Magistrate Judge William B. Carter set a scheduling hearing for August 12, 2004, and a trial date was scheduled for September 20, 2004. A first superseding indictment was filed on August 24, 2004, and Tribble was arraigned on August 26, 2004. At that time, an October 25, 2004, a trial date was set. The government filed a motion to disqualify counsel on September 8, 2004, which was granted on September 29, 2004. New counsel was appointed on October 6, 2004. On October 25, 2004, newly appointed defense counsel filed a motion to schedule a new trial date and the Court concluded, pursuant to 18 U.S.C. § 3161(h)(8)(A), and because recently appointed substitute counsel needed more time to review thousands of pages of materials, the ends of justice would be served by granting the continuance and such outweighed the best interests of the public and the defendant in a speedy trial. Therefore, the Court then scheduled the trial for March 21, 2005 (Criminal Case Number 1:03-cr-238, Court File No. 74).

00033). **Count One** of the **Bill of Information** charges that on November 19, 2001, Robert A. Tribble, aided and abetted other persons known and unknown to the grand jury, to cause a communication to be delivered by the Postal Service which contained a threat to injure the Honorable R. Allan Edgar; [sic] in violation of 18 U.S.C. §§ 876 and 2. **Count Two** of the **Bill of Information** charges that on June 21, 2004, Robert A. Tribble, having been charged with a violation of 18 U.S.C. §§ 876 and 2, and having been released on bond pursuant to Chapter 207 of Title 18, did fail to appear as required for trial before the Honorable Curtis L. Collier in case number 1:03-cr-238; [sic] in violation of 18 U.S.C. § 3146. There is no plea agreement between the government and the defendant.

(PSI, (emphasis in original)).

After granting defense counsel's objection to paragraph 48 of the PSI which indicated Tribble was in custody (Tribble argued he was on supervised release), the Court determined Tribble's sentencing guidelines offense level was 15; his criminal history category was V; and his guideline range was calculated as 37-46 months of imprisonment. On June 3, 2005, this Court sentenced Tribble to 46 months imprisonment (38 months on Count One and 8 consecutive months on Count Two) and three years supervised release. Tribble, proceeding *pro se*, appealed his judgment of conviction, and the sentence imposed by the district court which was affirmed on March 21, 2007, by the United States Court of Appeals for the Sixth Circuit (Court File No. 19). Tribble timely filed the instant § 2255 motion on February 21, 2008, and supplemented his motion on March 20, 2008.

## III. Facts

The following recitation of the facts is from the PSI:

5. On November 20, 2001, a letter was received at the Joel E. Solomon Federal Courthouse addressed to The Honorable R. Allan Edgar, Chief United States District Court Judge. The letter was postmarked November 19, 2001, and a stamp on the back of the envelope indicated that the letter was mailed from the local jail facility, CCA Silverdale. The envelope also had a return address of T. Johnson, P.O. Box 23148, Chattanooga, Tennessee 37422, the address for CCA Silverdale. Pursuant to procedure at the time, (following the national scare involving anthrax sent through

the mail) all mail was opened in a room with a contained ventilation system in the basement of the building. On that day, an employee of the District Court Clerk's Office was opening the mail. When the envelope came open, a white powder fell out of the envelope. The clerk notified building security, and the area was contained pursuant to protocol, and the envelope and powder were removed and sent for analysis to determine if the powder was toxic. Lab reports indicate that the substance was not toxic.

6.    The letter contained in the envelope with the white powder stated the following written in block letters:

> "Ever wonder how it feels to die slowly? Wonder about those you sentenced so long ago? How are they suffering years later? Now experience the day to day anguish we have not knowing if can [sic] out live the judgement. You know you've wrecked so many lives. It's your turn to know how many people innocently close to you will suffer simply because of knowing you!"

7.    The ensuing investigation indicated that the only 'T. Johnson' housed as an inmate at CCA Silverdale was Tavin Johnson who was a state prisoner housed in protective custody with federal prisoners. Another federal inmate housed at Silverdale, Robert Tribble, passed a note to the warden of the facility and told him that other federal inmates had written a threatening letter to a federal judge and were going to use Johnson as the scapegoat, which he did not think was fair. Other federal inmates in that unit were Joseph Goins, John Wagner [sic] and Bryan Sanders. Goins and Wagner had been sentenced by Judge Edgar and Tribble was awaiting sentencing before Judge Edgar. Sanders' case was assigned to Judge Curtis L. Collier. Each inmate was interviewed, polygraphed [sic] and submitted to DNA testing.

8.    Robert Tribble's DNA was found on the letter according to DNA analysis. No other DNA was found on the envelope. There was no fingerprint evidence available on the envelope and handwriting analysis failed to indicate who had written the letter or addressed the envelope. An adhesive label from a stick of deodorant in the cell of Joseph Goins was used to help seal the letter closed.

9.    When questioned by the United States Postal Inspector, Robert Tribble indicated that inmates Goins and Wagner had sent the letter. When they were questioned, along with Sanders and Johnson, all denied having any role in the mailing of the letter. Polygraph results indicate that the response of the inmates, with the exception of Tribble, were not deceptive. The responses of Robert Tribble to questions regarding the writing and mailing of the letter did indicate deception. During trial testimony, Wagner, Goins [sic] and Sanders all stated that they had nothing to do with the letter but that they each thought that the others had something

to do with the letter. Goins indicated that he believed the substance was foot powder.

10.    Robert Tribble was charged with mailing the threatening letter to Judge Edgar. The first trial ended in a hung jury and mistrial. The original Indictment was dismissed without prejudice and a second Indictment was later filed by the grand jury. Additionally, the defendant was being supervised by federal probation on a previous federal conviction (Docket No. 1:02-cr-188). The defendant was also facing probation revocation proceedings in the Eastern District of Tennessee based upon the new federal charges and other conduct in violation of the terms of the defendant's supervised release. On May 3, 2004, the defendant failed to appear for a supervised release revocation hearing before Judge Collier. On June 21, 2004, the defendant failed to appear for trial scheduled before Judge Collier. The following day, the United States Marshals Service was notified by Florida law enforcement that Mr. Tribble had possibly committed suicide by drowning in the Atlantic Ocean. The investigation indicated that Tribble had taken a bus to the Florida Keys (he was residing in Miami at the time) and had given his belongings which included a suicide note to another person to leave at a local church. The reverend of the church turned the belongings and note over to authorities. The note, which expressed feelings for his family, indicated that Mr. Tribble had planned to go out into the ocean in a small raft and then drown himself as he could not swim.

11.    Florida authorities began investigating the matter and believed that evidence including financial activity and interviews with individuals who had spoken with Mr. Tribble after the day he supposedly committed suicide, indicated that Mr. Tribble was still alive. They later received information that Mr. Tribble would be traveling on Florida Interstate I-10 in a maroon Infinity SUV. The car was spotted and pulled over by a Leon County Deputy. The deputy found that the driver of the vehicle matched the description of Tribble, and he was removed from the car and handcuffed. As he was being removed from the car, Mr. Tribble was verbally aggressive, screaming at the officers. Mr. Tribble had a false South Carolina Driver's License on his person in the name of Christopher Patrick Aguirre. The name Christopher Patrick Aguirre is associated with several fraud cases currently pending in Citrus County, Florida. A passenger in the vehicle was Lontonya Monique Edge. Ms. Edge was also taken into custody but later released.

12.    Mr. Tribble was turned over to the United States Marshals Service following his arrest on June 22, 2004. Throughout the booking procedure, Mr. Tribble insisted his name was Christopher Patrick Aguirre and refused to submit to processing and fingerprinting procedures. On June 23, 2004, Mr. Tribble appeared in federal court in the Northern District of Florida before Senior District Judge William Stafford and stated again that his name was Christopher Aguirre. He did submit to fingerprinting at that time and was identified as Robert Tribble through the fingerprint analysis. On

June 29, 2004, at a detention hearing, Mr. Tribble admitted to his true identity and agreed to be transferred to the Eastern District of Tennessee.

(PSI, pp. 3-5).

## IV.    Discussion

### A.    *Procedural Bar*

Grounds that were previously raised on direct appeal may not be raised in a collateral attack on the federal conviction absent exceptional circumstances. *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996); *see also Giraldo v. United States*, 54 F.3d 776 (6th Cir. 1995), *available at* 1995 WL 290354 (unpublished), *cert. denied*, 516 U.S. 892 (1995) ("It is well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on appeal absent highly exceptional circumstances, such as an intervening change in the law."). Thus, to the extent Tribble attempts to relitigate issues he raised on appeal, he is barred from doing so.

On direct appeal Tribble argued his guilty plea was unconstitutional because there was no factual basis to support his plea of guilty to Count 1. The Sixth Circuit concluded the government's recitation of the facts established the elements of aiding and abetting the mailing of a threatening communication, and the District Court did not err in finding an adequate factual basis supported Tribble's guilty plea since he acknowledged, under oath, that the government's recitation of the facts was accurate,(Court File No. 19). Thus, to the extent Tribble claims his guilty plea was not based on a factual basis he is barred from seeking relief on this claim as he previously raised it on appeal, and he has not show exceptional circumstances to permit this Court to consider the claim. *See DuPont v. United States*, 76 F.3d 108,110 (6th Cir. 1996).

## B.    *Ineffective Assistance of Counsel*

To establish ineffective assistance of counsel Tribble must demonstrate, as established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), two essential elements:  (1) counsel's performance was deficient, i.e., below the standard of competence demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, i.e. deprived the defendant of a fair trial rendering the outcome of the trial unreliable.  *Id*. at 687-88; *see also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987).  In plea proceedings, the movant must show but for counsel's deficient performance, he would not have pleaded guilty.  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial.  *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir. 1995).  The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992).  Tribble submits several claims of ineffective assistance of counsel which the Court will address separately.

### 1.    *Guilty Plea*

Tribble's first claim of ineffective assistance of counsel is convoluted and also intertwined with a claim of actual innocence.  As the Court understands the claim, Tribble is asserting that, for several reasons, his pleas were invalid.  First, he pleaded guilty due to his attorney's incorrect explanation of the law regarding his guilty pleas.  According to Tribble, contrary to counsel's statement, no law exists which would prohibit a retrial on Count 1 and a plea of guilty to Count 2.

Second, his lawyer incorrectly advised him of the elements of the crime of aiding and abetting.

When Tribble presented these claims in his direct appeal, the Sixth Circuit concluded his unconditional plea of guilty waived all non-jurisdictional defects in the underlying proceeding; he failed to preserve any issues by specifying them in his plea; and his unconditional guilty pleas waived these challenges to his conviction (Court File No. 19, p. 3). Tribble now asserts he is actually innocent of the aiding and abetting charge in Count One and that, but for his lawyer's improper advice, he would have gone to trial on Count One and pleaded guilty to failing to appear for his trial (Count Two). Because of Tribble's concession that, regardless of counsel's advice, he would have pled guilty to Count Two, any issue as to whether counsel gave him ineffective assistance in connection with Count Two has become moot.

a.     Counsel's Advice

Tribble claims counsel misadvised him in two respects: (1) that he could not go to trial on Count One, if he plead guilty to Count Two and (2) as to the elements of the offense of aiding and abetting. Tribble also asserts he is innocent of Count One (aiding and abetting). Tribble's counsel testifies to the contrary.

Defense counsel has submitted an affidavit, in which he testifies to the events which follow. Counsel met with Tribble on March 18, 2005, after the plea bargain deadline had passed. At that meeting, Tribble indicated he was willing to enter guilty pleas to both counts. In return for those pleas, the United States agreed it would not object to any adjustments made for acceptance of responsibility. On that same date, a change of plea hearing was held, and, during that hearing, Tribble pleaded guilty to the charges, acknowledging a factual basis existed for the pleas he entered.

Counsel specifically denies he informed Tribble the government would not allow him to

plead guilty to Count 2 and be tried on Count 1. Counsel avers he informed Tribble the government would not object to an acceptance of responsibility adjustment if he would plead to both charges without a written plea agreement. In addition, counsel states Tribble acknowledged a factual basis existed for his guilty pleas, did not deny he caused the letter to be mailed, and decided to plead guilty under the government's terms (Criminal Court File No. 27-2, p. 4) .

The record demonstrates with absolute clarity that any deficiency of performance on counsel's part was corrected by the Court. During the plea colloquy, the Court clearly instructed Tribble on the two counts in the bill of information to which he was pleading:

> Mr. Tribble, before a person can be found guilty of an offense in federal court, it is necessary for the government to prove certain essential elements beyond a reasonable doubt. The essential elements for Count 1 are as follows: That the defendant *knowingly mailed* or *caused to be mailed* through the United States Postal Service a communication addressed to another person, (2) the communication contained a threat to injure the person of the addressee or of someone else.

(Court File No. 17, p. 10) (emphasis added). Thereafter, Tribble affirmed he understood the elements of the crime to which he was pleading. Thus, the record demonstrates Tribble pleaded guilty to knowingly mailing or knowingly causing to be mailed a threatening communication to Judge Edgar.

Likewise, the record shows Tribble was advised of his right to proceed to trial and assert his innocence and he was properly instructed on the nature of the charges against him. Upon the Court's inquiry, Tribble responded he wished to plead guilty to the charges because he was in fact guilty. Thus, the record reflects Tribble decided to waive his constitutional right to proceed to trial and instead, enter guilty pleas which resulted in him receiving the benefit of a two level reduction

for acceptance of responsibility[3] (Court File No. 16).

Therefore, even if there was deficient performance, the Court eradicated any prejudice from counsel's error when it informed Tribble of the elements necessary to convict on Count 1 and advised him of his right to proceed to trial. Moreover, Tribble did not apprize the Court there was a discrepancy between its description of the elements and counsel's explanation or that although the Court was instructing him he could proceed to trial, counsel had instructed him he must waive his right to trial on Count One if he wished to enter a guilty plea to Count Two. More important, during the Court's colloquy with Tribble, he stated he understood his right to proceed to trial and he wished to waive that right. In addition to acknowledging he understood the charges to which he was pleading guilty, Tribble further acknowledged, under oath, the recited factual basis was not untrue and he was pleading guilty because he was guilty (Court File No. 17, pp. 15-16). Thus, if there was error, the Court cured any error during the guilty plea hearing. *See United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992)("[I]f the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant."). Consequently, even assuming counsel's advise was deficient, for the reasons explained below, Tribble has not established prejudice, as his pleas were entered knowingly, intelligently, and voluntarily.

_____

[3] The government's response reflects "[c]ounsel accurately conveyed to petitioner the position of the United States that petitioner could not enter a bifurcated plea and plead only to Count Two and receive any sentencing benefit." (Court File No. 27, p. 13). In addition, the government's response reflects the government agreed not to object to an acceptance of responsibility if Tribble pled guilty to both counts but "would not agree to an acceptance of responsibility adjustment if petitioner went to trial on Count One and pleaded guilty to Count Two" (Court File No. 27, p. 13).

b.      Voluntary Pleas

In evaluating the validity of Tribble's collateral challenge to his plea under § 2255 (entry of guilty plea as result of counsel's erroneous advice), the Court must determine whether he knowingly, intelligently, and voluntarily entered his pleas of guilty.  Based upon the plea colloquy and the applicable law, Tribble knowingly, intelligently, and voluntarily entered pleas of guilty as any mis-advice counsel may have given Tribble was corrected by the Court during the Rule 11 hearing (Court File No. 17).

As explained above, during the plea colloquy, the Court clearly instructed Tribble on the two counts in the bill of information to which he was pleading and thereafter, Tribble affirmed he understood the elements of the crime to which he was pleading.  Thus, the record demonstrates Tribble pleaded guilty to knowingly mailing or knowingly causing to be mailed a threatening communication to Judge Edgar.

Likewise, as previously discussed, the record shows Tribble was advised of his right to proceed to trial and assert his alleged innocence; advised of  the nature of the charges against him; responded he wished to plead guilty to the charges because he was in fact guilty; and decided to plead guilty and receive the benefit of a two level reduction for acceptance of responsibility.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).  Tribble acknowledged in open court, under oath, that he understood the consequences of his guilty plea.  The record in this case clearly reveals Tribble consciously chose to plead guilty rather than to go trial and his plea was knowing and voluntary.  Consequently, Tribble is not entitled to any relief on his claim that his plea was based

on counsel's incorrect advice.

c.    Actual Innocence

Tribble's claim of actual innocence of the aiding and abetting conviction is unsubstantiated by the record.  There is absolutely no proof in the record demonstrating Tribble's actual innocence.  All that is before this Court is Tribble's factually unsupported allegation that he is actually innocent.  A habeas petitioner attempting to establish "actual innocence" must meet a high standard.  *Bousley v. United States*, 523 U.S. 614 (1998).  To demonstrate actual innocence, Tribble must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'"  *Id.* at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995).  The Supreme Court emphasized  "'actual innocence' means factual innocence, not mere legal insufficiency."  *Id.*  The Supreme Court further instructed that "the Government is not limited to the existing record to rebut any showing that petitioner might make.  Rather, . . . the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy . . . "  *Id.* at 624.  Moreover, to be credible a claim of actual innocence requires a movant to "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. at 324.  To warrant relief, the evidence must undermine the Court's confidence in the outcome of the trial. *Id.* at 316.  No such showing has been made here, as Tribble has failed to submit any evidence supporting his claim of innocence.  Thus, there is no evidence before the Court which undermines its confidence in Tribble's guilty pleas or his sentence.

It is evident from Tribble's acknowledgment of the factual proffer during the plea colloquy

and his failure to object to the specific facts revealed in the probation report, that he engaged in the conduct to which he pleaded guilty. Tribble's statements made during his plea colloquy are entitled to a "presumption of verity," *United States v. Martinez*, 169 F.3d 1049, 1054 (7th Cir. 1999), and Tribble has presented nothing to undermine that presumption. Tribble entered into a knowing and voluntary plea after the Court conducted a thorough Rule 11 colloquy. At that time, Tribble agreed to the factual basis for the plea which supports the conviction and which the Sixth Circuit concluded on direct appeal was sufficient to provide a factual basis for the crimes to which he pleaded guilty. The record before this Court contains no showing of actual innocence, and no fundamental miscarriage of justice has been demonstrated.

Tribble has not presented any evidence to contradict his admissions in open court or any of the other evidence indicating his guilt. Tribble simply has not provided any evidence demonstrating he is actually innocent. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Tribble's factually unsupported allegation of actual innocence does not raise a constitutional issue. Moreover, Tribble's protestations of innocence are refuted by the record. Because Tribble has presented absolutely no evidence to undermine the Court's confidence in the outcome of the case, he has not demonstrated ineffective assistance of counsel.

In conclusion, Tribble has not satisfied his heavy burden of presenting evidence demonstrating his actual innocence. Accordingly, Tribble's claim that he is actually innocent and his defense attorney was ineffective because he incorrectly advised him regarding his guilty plea,

must fail.

### 2. *Counsel's Conflict of Interest*

Next, Tribble claims "defense counsel had actual and real conflict of interest representing both sides of the case," based upon counsel's representation of the Hamilton County Sheriff's Department, which operates the jail from which the letter at issue in Count One was mailed.[4] Tribble claims the Sheriff's Office "had [an] opposite interest in the outcome of the case." (Court File No. 21, p. 6).[5] Tribble not only fails to explain how the Sheriff's Office had any interest in the outcome of his case, he has failed to explain how the alleged conflict affected counsel's performance.

Tribble has set forth no specific facts relating to the alleged conflict of interest. Without any factual basis for his allegations, Tribble's claim is insufficient to raise an issue for this Court's review. Nevertheless, for the sake of discussion, the Court will presume Tribble's claim is adequate.

To establish a violation of the Sixth Amendment, Tribble must demonstrate counsel "actively represented conflicting interests" and that an actual conflict of interest adversely affected counsel's performance. *Wilson v. Parker*, 515 F.3d 682, 697-98 (6th Cir. 2008). When a § 2255 movant claims ineffective assistance of counsel on the ground counsel represented simultaneously conflicting interests at trial, he "must demonstrate that 'a conflict of interest actually affected the adequacy of his representation,'" *Mickens v. Taylor*, 535 U.S. 162, 168 (2002) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980)), but need not show that but for the conflict the outcome of

---

[4] The Court notes, however, the PSI reflects the letter was mailed from CCA-Silverdale, not from the Hamilton County Jail.

[5] Defense counsel, Dee Hobbs, represents the Sheriff's Department in 42 U.S.C. § 1983 litigation.

the trial would have been different. The conflict must be "real or genuine, as opposed to [ ] hypothetical," *Moss v. United States*, 323 F.3d 445, 467 n. 23 (6th Cir. 2003), and must have adversely affected "counsel['s] . . . basic strategic decisions." *Id*. at 446 (quotations omitted).

Here Tribble has not demonstrated an actual conflict, but even assuming such, he has failed to demonstrate the alleged conflict affected counsel's performance. To establish a conflict of interest adversely affected counsel's performance, Tribble must "point to specific instances in the record to suggest an . . . impairment of his interests . . . .There is no violation where the conflict is . . . merely hypothetical." *United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996) (citations omitted).

To demonstrate his attorney had an actual conflict of interest, Tribble must demonstrate counsel "'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (quoting *Cuyler v. Sullivan*, 446 U.S. at 350). Tribble has done neither. This is not a situation where counsel was representing co-defendants or where the outcome of Tribble's case was in way related to any case in which his counsel represented the Sheriff's Department or where the outcome of a case in which counsel represented the Sheriff's Department related in any way to Tribble's case. In sum, there is no proof an actual conflict of interest affected defense counsel's representation of Tribble. Accordingly, Tribble has failed to demonstrate counsel was ineffective or that he suffered any prejudice as a result of counsel's representation.

### 3. *Denied Right to Trial by Defense Counsel*

In this claim Tribble, once again, claims he is actually innocent, but entered a guilty plea

because counsel failed to prepare for trial on Count 1 of the indictment and, on the eve of trial, instructed him he must plead guilty to both counts because he had failed to appear for his originally scheduled trial and if he did not plead guilty the government could charge him under the new domestic terrorist statutes.

The Court observes defense counsel was originally appointed to represent Tribble in the superseding indictment which charged Tribble with knowingly causing to be delivered, and aiding and abetting the delivery by the Postal Service, a communication containing a threat to injure the Honorable R. Allan Edgar, in violation of 18 U.S.C. §§ 876 and 2 (Count 1) and failure to appear, in violation of 18 U.S.C. § 3146 (Count 2) in case number 1:03-cr-238. Although, Tribble subsequently waived his right to be indicted and entered an oral plea of guilty to a two-count bill of information charging him with aiding and abetting other persons to knowingly cause to be delivered by the postal service, a threatening communication to the Honorable R. Allan Edgar and failure to appear for trial, counsel's preparation for trial on the superseding indictment is the same as needed to prepare for the Counts in the bill of information.

A review of criminal case number 1:03-cr-238 reveals counsel met at length with Tribble's previous counsel and reviewed documents pertaining to the aiding and abetting count. *See* Criminal Case Number 1:03-cr-238 (Court File No. 73). In addition, counsel requested a continuance to properly prepare for trial and read the thousands of pages previous counsel gave him. The court file also reflects counsel contacted the prosecution for any additional discovery, which was provided to him. *See* Criminal Case Number 1:03-cr-238 (Court File No. 77). It is apparent from the prosecutor's correspondence defense counsel had engaged in at least two previous conversations with the prosecutor inquiring about discovery and convinced the prosecutor to permit him to inspect

items which the prosecution maintained were not discoverable. *Id.* In addition, although it appears counsel who was disqualified filed four motions in limine; three of which were relevant to Count 1, three of which the Court reserved ruling on, and one of which was denied, there was no reason for subsequent counsel to refile them. *See* Criminal Court Case Number 1:03-cr-238 (Court File No. 81). In addition, the record reflects counsel filed a sealed motion for application for issuance of subpoenas. *Id.* (Court File No. 83). Consequently, the record refutes Tribble's claim that counsel was unprepared for trial and he had no choice but to plead guilty. Moreover, counsel's affidavit reflects Tribble authorized counsel to release the witnesses and decided to plead guilty to both charges pending against him.

Finally, the transcript of Tribble's rearraignment refutes his allegations. During his rearraignment proceedings, the following colloquy occurred between the Court and Tribble:

> THE COURT: Have you had enough opportunity to discuss your case with Mr. Hobbs?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you satisfied with Mr. Hobbs' representation?
>
> THE DEFENDANT: Yes, sir.
>
> . . .
>
> THE COURT: Has anyone threatened you or forced you or anyone else to get you to plead guilty?
>
> THE DEFENDANT: No, sir, they have not.

(Court File No. 17, pp. 3, 8-9).

In addition to the record refuting Tribble's allegations that counsel was unprepared, Tribble has failed to identify what information counsel failed to discover or what information he might have

discovered if he had pursued further investigation.

Consequently, a review of the record demonstrates Tribble's allegations counsel was unprepared for trial lacks any factual basis and is wholly lacking in credibility. Additionally, Tribble has not identified any evidence a more thorough investigation would have revealed. Consequently, even if counsel's performance was deficient, no prejudice has been shown.

### 4. *Denial of Speedy Trial*

Tribble claims he was denied a speedy trial due to ineffective assistance of counsel. In support of this claim, Tribble claims "I was not allowed a fast and speedy trial by tactical advantage by government delays in reindictment and retail [sic] four years after offenses in Count One. Witnesses were released, and Silverdale records lost due to delays. I did not knowingly waive a fast and speedy trial. Silverdale staff and inmates had moved and been released after four years delay. Government moved for dismissed after 1st trial." (Court File No. 21, p. 9).

The Court construes this claim as one alleging counsel was ineffective for failing to request the dismissal of the indictment due to pretrial delay. Tribble's argument may be interpreted as arising under the provision of the Speedy Trial Act, codified at 18 U.S.C. §§ 3161 *et. seq.*, or under his Sixth Amendment right to a speedy trial, as he has not specified which provision he relies upon Therefore, the Court will address the claim as if it was raised under both the Speedy Trial Act and the Sixth Amendment.

### a. Speedy Trial Act

The Speedy Trial Act provides a federal criminal defendant's trial must commence within seventy days of the filing date of the information or indictment, or of the defendant's initial appearance, whichever comes later. 18 U.S.C. § 3161(c). The Act, however, contains a long list

of periods of delay that are to be excluded in computing the time within which a trial must commence. These exclusions work to stop the clock, not reset it. Section 3161(h)of the Act specifically provides for the exclusion of the following pertinent periods of delay in computing the time within which the trial must commence:

>(D)    delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

>(3)(A) Any period of delay resulting from the absence or unavailability of the defendant or an essential witness.

>(B) For purposes of subparagraph (A) of this paragraph, a defendant or an essential witness shall be considered absent when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence. For purposes of such subparagraph, a defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial.

>(7)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting os such continuance outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h).

If the government fails to comply with the Speedy Trial Act, the indictment shall be dismissed on the motion of the defendant. *Id*. § 3162(2). In determining whether to dismiss a case with or without prejudice the court shall consider (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a re-prosecution on the

administration of the Speedy Trial Act and on the administration of justice. *Id*.

Tribble contends a Speedy Trial Act violation occurred in his case because nearly four years elapsed from the date on which he was originally indicted, March 11, 2003, to the date on which he entered his guilty plea, March 18, 2005. Tribble is mistaken as barely more than two years lapsed from the time of his original indictment and the time he entered his guilty plea.

Tribble has failed to identify the specific periods he presumably claims are not excluded either by order of the Court or by virtue of Tribble's own actions from the seventy day requirement. Nevertheless, a review of the docket reveals no Speedy Trial Act violation as the majority of the delays are attributable to Tribble's actions.

A review of the complete history of Tribble's case is required to put this issue into perspective. On March 11, 2003, Tribble was charged with mailing a threatening letter to Judge Edgar (Criminal Case Number 1:03-cr-64, Court File No. 1). The case went to trial May 12, 2003, and ended in a hung jury, with the Court declaring a mistrial (*Id.*, Court File No. 66). On May 29, 2003, upon motion by the government, the Court dismissed the indictment without prejudice (*Id.*, Court File No. 68).[6]

On November 25, 2003, an indictment was returned charging the same offense conduct

---

[6]     The delay that occurred after the mistrial and before re-indictment is expressly excludable pursuant to the Act:

> If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

18 U.S.C. § 3161(h)(5).

(Criminal Case Number 1:03-cr-238, Court File No. 1). Tribble was arrested and arraigned on Janaury 12, 2004, and released on bond pending trial. Trial was scheduled for February 23, 2004 (*Id.*, Court File No. 5). Tribble apparently filed a motion requesting to reschedule the trial as the government filed a notice of non-opposition to his motion to continue the trial date (*Id.* Court File No. 32). On February 24, 2004, the trial was rescheduled to June 21, 2004 (*Id.*, Court File No. 33). Thus, the clock was stopped and only 43 days had passed.

Tribble subsequently failed to appear for a supervised release revocation hearing in a previous case on May 3, 2004, and a bench warrant was issued. On June 21, 2004, Tribble failed to appear for the trial in this case. Tribble was arrested in Florida and on June 23, 2004, appeared in district court in the Northern District of Florida, claiming to be Christopher Patrick Aguirre (Criminal Case Number 1:01-cr-68, Court File No. 48).

Tribble was subsequently returned to the Eastern District of Tennessee and a scheduling order was filed on August 13, 2004, which set the trial in this case for September 20, 2004 (Criminal Case No. 1:03-cr-238, Court File No. 54). A superseding indictment was filed on August 24, 2004, which added the charge for failure to appear (*Id.*, Court File No. 55 (Superseding Indictment)). On August 26, 2004, Tribble was arraigned on the Superseding Indictment and a new scheduling order was issued, resetting the trial for October 25, 2004 (*Id.* Court File No. 57). The government subsequently filed a motion to disqualify counsel on September 8, 2004. New counsel was appointed on October 6, 2004, and he filed a motion to continue the trial date. Pursuant to Tribble's motion, the Court rescheduled the trial for March 21, 2005, finding "the ends of justice served by granting a continuance outweigh[ed] the best interests of the public and the defendant in a speedy trial." (*Id.*, Court File No. 74). Tribble entered guilty pleas on March 18, 2005 (Criminal Court File

No. 1:05-cr-33, Court File No. 3).

Pursuant to the Act, excluding the time within which pre-trial motions were pending and excludable delay at his request, Tribble pleaded guilty less than 70 days from the date of his arraignment in the instant case.

After Tribble was arrested in Florida on the outstanding bench warrant for failing to appear for the retrial of this matter, he appeared before the Magistrate Judge in this case on August 6, 2004, for a detention hearing and on August 12, 2004, for a preliminary hearing. A First Superseding Indictment was issued on August 24, 2004, and Tribble was arraigned on August 26, 2004. Thus, it appears the seventy-day time-clock began to run on August 26, 2004. *See* 18 U.S.C. § 3161(c)(1) and § 3161(h)(5).[7]    However, pursuant to § 3161(h)(1)(D), which provides for the exclusion of delay resulting from any pretrial motion (from filing through conclusion) it stopped on September 8, 2004, when a motion to disqualify counsel was filed by the government. Thus, thirteen days elapsed from the arraignment and the government's filing of the motion to disqualify defense counsel. *See* Criminal Court Number 1:03-cr-238 (Court File No. 59). The speedy trial clock resumed on October 6, 2004, when the Court granted the motion, *id.* (Court File No. 71), but was subsequently stopped on October 25, 2004, when new defense counsel filed a motion to continue

---

[7]    Section 3161(h) provides for the exclusion of the following in computing the time within which the trial of any such offense must commence

> If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

18 U.S.C. § 3161(h)(5).

the trial. Nineteen days elapsed from the time the clock resumed on October 6, 2004, until it was stopped with defense counsel's motion on October 25, 2004. *Id.* (Court File No. 73). On November 24, 2004, the Court granted an ends of justice continuance of the trial to March 21, 2005, finding additional time was necessary due to counsel's recent entry into the case and the voluminous record with which counsel needed to familiarize himself with to prepare for trial. *Id.* (Court File No. 74). The time from November 24, 2005, until the new trial date, March 21, 2005, is fully excludable under the Speedy Trial Act *See* 18 U.S.C. § 3161(h)(7)(A). Thus, it appears only thirty-two days elapsed on the speedy trial clock and the remainder of the time has been excluded under the Speedy Trial Act.[8]

Because it appears only thirty-two days elapsed under the Speedy Trial Act, no violation occurred. Accordingly, Tirbble is unable to demonstrate his attorney's performance was defective for failing to request his case be dismissed on the basis of the Speedy Trial Act. Thus, to the extent Tribble's § 2255 claim is premised on the Speedy Trial Act, it must be denied as no speedy trial violation occurred.

> b.    Sixth Amendment Right to Speedy Trial

For the reasons explained below, Tribble's argument also fails under the Speedy Trial Clause of the Sixth Amendment of the Constitution. The appropriate analysis for determining whether a defendant's right to a speedy trial has been denied requires the Court to apply a balancing test which weighs the conduct of both the prosecution and the defendant. *See Barker v. Wingo*, 407 U.S. 514, 521 (1972) (analysis of Sixth Amendment speedy trial claims focus on length and reason for the

---

[8]    Tribble subsequently pled guilty on March 18, 2005, to a Bill of Information that was filed on March 21, 2005.

delay of trial, and the resulting prejudice). The four factors the Court considers are (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.* at 530-32.

The length of the delay from the time Tribble was arraigned on the superseding indictment until the entry of his guilty plea is less than a year, and arguably, is not extraordinary or sufficient to trigger further inquiry. Even if it is sufficient to require further inquiry, however, the other factors weigh against Tribble as the majority of the delay is attributable to Tribble. In addition, Tribble did not assert his speedy trial right or identify specific ways in which his defense was impaired by the delay. Because the majority of the delay between his superseding indictment and entry of his guilty pleas is attributable to his actions—because he absconded and failed to appear at trial the government had to disqualify counsel because he would be a witness against Tribble, and two motions to continue the trial date were filed on Tribble's behalf—the second factor weighs against Tribble. In addition, Tribble has failed to allege or substantiate how he was prejudiced by the delay in his trial. *See Barker v. Wingo*, 407 U.S. at 530-32. Tribble has not identified a single witness that was unavailable or a single piece of evidence that had been destroyed in the interim. Tribble's general allegations that Silverdale staff and inmates had moved and been released, without identifying the alleged staff and inmates and revealing what their proposed testimony would have been, are insufficient to demonstrate prejudice.

Consequently, the *Barker* factors weigh strongly against Tribble and there is no specific evidence his defense was impaired. Accordingly, because the record does not indicate Tribble's Sixth Amendment right to a speedy trial was violated, Tribble is unable to demonstrate his attorney was ineffective for failing to pursue dismissal of the information based on an alleged violation of

the Speedy Trial Clause.

A judgment order will enter **DISMISSING** the § 2255 motion.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**